

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1239 | **DATE** | 10/10/2003 |
| **CASE TITLE** | Robertson vs. Total Renal Care | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Total Renal Care's motion for summary judgment (22). Judgment is entered in favor of defendant. The trial date of 1/5/2004 is vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 2 1 2003 | |
| | Notified counsel by telephone. | | date docketed | 32 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILBUR I. ROBERTSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 02 C 1239 |
| TOTAL RENAL CARE, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Wilbur Robertson sued his former employer Total Renal Care ("TRC"), alleging he was fired from his job as a dialysis nurse because of his gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*[1] TRC has filed a motion for summary judgment. For the reasons stated below, the Court grants TRC's motion.

### Factual Background

The parties agree to almost all of the facts relevant to this case. *See* Pl.'s Resp. to Def.'s Facts. TRC hired Robertson in 1991 as a dialysis technician. Def.'s Facts ¶ 43. In 1993 he received his Licensed Practical Nursing degree and began working as a full-time acute care dialysis nurse for TRC's Facility # 317, which provided dialysis services to seven hospitals. *Id.* ¶¶ 43, 3. Robertson usually worked at Olympia Fields Hospital, but he was periodically asked to

---

[1] Attorneys James Spizzo and Paige Barnett of Vedder, Price, Kaufman & Kammholz were appointed to represent Robertson. The Court thanks counsel for their diligent work on his behalf.

1



work at other hospitals. *Id.* ¶ 45. In 1998 Robertson worked with nurses Hattie Coley, Carolyn McGee-Dade and Ruby Page at Olympia Fields Hospital. *Id.* ¶ 46. In April 1998, Audrianne Stromski became the administrator for Facility # 317 and reported to Regional Director Carole Shepherd. *Id.* ¶¶ 4, 6. Robertson and the other nurses reported directly to Stromski and indirectly to Shepherd. *Id.* ¶ 44.

Nurse Carmen Sandoval, who reported to Stromski, acted as the staffing and scheduling coordinator for Facility # 317. *Id.* ¶¶ 11, 16. Stromski and Sandoval tried to schedule nurses to the same hospitals on a day-to-day basis. *Id.* ¶ 18. But nurses could be pulled from their normal hospitals to work shifts at other Facility # 317 hospitals as needed. *Id.* ¶ 19. In addition to their regular weekday shifts, nurses had to work on-call shifts, which required the nurse to return to the hospital after hours to perform dialysis if a patient needed it. *Id.* ¶ 25. Occasionally, nurses were assigned to take an on-call shift with little or no notice. *Id.* ¶ 27. But Sandoval tried to mail the on-call schedules to nurses at least one or two weeks in advance. *Id.* ¶ 31. Stromski would review the schedules before Sandoval sent them out. *Id.* ¶ 32. Olympia Fields Hospital used a different type of dialysis equipment than the other Facility # 317 hospitals, so only those nurses trained to use the equipment could cover an on-call shift at Olympia Fields. *Id.* ¶ 36.

If a nurse knew in advance that he or she could not be on call a particular day, the nurse could ask Sandoval or Stromski to be left off the on-call schedule for that day. *Id.* ¶ 37. Stromski tried not to schedule a nurse to be on call for a specific date if the nurse had requested that day off. *Id.* ¶ 34. A nurse who could not cover an on-call shift was required to find a replacement or, if that did not work, to call Stromski or Sandoval for help in finding a replacement. *Id.* ¶ 38. If Stromski and Sandoval could not find a replacement, one of them

would usually cover the on-call shift for the nurse. *Id.* ¶ 39.

Robertson worked several on-call shifts per month. Pl.'s Dep. at 24; Def.'s Facts ¶ 52. He was also pulled from Olympia Fields to work at another Facility # 317 hospital about ten to twelve times in 1998. Pl.'s Dep. at 14. The morning of June 12, 1998, Sandoval called Robertson at Olympia Fields Hospital and told him to go to Grant Hospital to dialyze a patient because another nurse had called in sick. Def.'s Facts ¶ 59. Robertson testified that he asked Sandoval to send Coley to Grant Hospital, Pl.'s Dep. at 72-73; Sandoval testified that Robertson refused to go to Grant Hospital because he did not want to drive in traffic. Def.'s Facts ¶ 61. Coley could not work at Grant Hospital because she was not trained on the equipment used there. *Id.* ¶ 65. After getting off the phone with Sandoval, Robertson called Shepherd to "get some clarity" on why he was being ordered to Grant Hospital. *Id.* ¶ 62. Shepherd convinced Robertson to go to Grant to dialyze the patient. *Id.* ¶ 63. Robertson took approved vacation time from June 18 through June 30, 1998. *Id.* ¶ 57.

In early June, Sandoval sent out the on-call schedule for June 22 through July 19. *Id.* ¶ 75. After receiving the schedule, Page called Stromski or Sandoval and told her that because she was on call the last week of the prior month's schedule, she would be on-call three weeks in a row under the new schedule. *Id.* ¶ 76. Page did not refuse to work the on-call shifts she was assigned, but she said she thought it was "a bit much" to be on call for three weeks in a row. *Id.* ¶ 78. Stromski told Page she would talk to Sandoval about changing the schedule, but she did not promise that Page would not have to work the assigned shifts. *Id.* ¶ 79. Stromski decided to revise the on-call schedule because she did not think it was fair to place Page on call for three consecutive weeks. *Id.* ¶ 81. Coley had requested earlier that she not be put on call from July 3

3

to July 5, so Sandoval placed Coley on call for June 29 through July 1 and Robertson on call for July 2 through July 4. *Id.* ¶ 82. Robertson received the revised schedule while he was on vacation. *Id.* ¶ 84. Coley called Robertson to ask if he had seen the schedule. *Id.* ¶ 85. He told her that he had seen it but could not cover his assigned shifts because he had made plans. *Id.* Robertson told Coley that he was not going to call Stromski about his problem with the revised schedule until he returned to work on July 1. *Id.* ¶ 86. Coley called Stromski and told her about her conversation with Robertson. *Id.* ¶ 92. Stromski told Coley that she could not respond to Robertson's concerns until he called her. *Id.* ¶ 94.

On July 1, Robertson called Stromski from Olympia Fields Hospital and told her that he would not cover the on-call shifts for July 2 through July 4. *Id.* ¶ 96. The parties disagree about the tone of the phone call and subsequent conversations between Stromski and Robertson. Stromski testified at her deposition that when Robertson called her, he said: "Consider yourself told. You didn't ask my permission to revise the schedule. I'm not covering your assignment for call" and then slammed down the phone. Stromski Dep. at 130. Stromski testified that she called Robertson back and told him that he needed to cover his shifts, but Robertson responded "I am not covering" and slammed down the phone. *Id.* at 131. Stromski says she called Robertson two more times on July 1, and both times he hung up on her. Def.'s Facts ¶ 103.

Stromski called TRC Human Resource Manager Maria Ficarella and told her about the conversations with Robertson. Stromski Dep. at 131. Ficarella suggested Stromski fire Robertson for insubordination. Def.'s Facts ¶ 103. Stromski could not speak with Shepherd, who was on vacation, so she called Shepherd's direct supervisor, Chuck Halstenson. *Id.* ¶ 104-05. He agreed with Ficarella that Robertson should be fired. *Id.* Stromski wanted to give

4

Robertson another chance, so she called him at Olympia Fields Hospital on July 2 and asked him to reconsider working the shifts. *Id.* ¶¶ 103, 106. Robertson refused to work the on-call shifts because he had "previous plans." *Id.* ¶ 106; Pl.'s Dep. at 81. This account is supported by Page, who testified at her deposition that she overheard Robertson tell someone on the phone in a rude manner that he would not cover his on-call shifts and then saw him abruptly hang up the phone. Page Dep. at 42-43; Page Dep. Ex. 2. Stromski says she called Robertson at least two more times on July 2, Def.'s Facts ¶ 107, but Robertson testified that he did not recall speaking to Stromski more than once on July 2. Pl.'s Dep. at 79-81.

Stromski called Ficarella and told her that Robertson still refused to cover his on-call shifts. Def.'s Facts ¶ 108. Ficarella told Stromski to fire Robertson. *Id.* ¶ 109. Instead, Stromski decided to suspend Robertson and wait for Shepherd to return from her vacation before deciding whether further disciplinary action was warranted. *Id.* ¶ 110. Stromski wrote a memo to Shepherd on July 2 describing her conversations with Robertson. *Id.* ¶ 111. On July 3, Stromski met with Robertson and told him that he was suspended without pay for refusing to work the on-call shifts. *Id.* ¶ 112. Stromski gave Robertson two written warnings–one for his resistance to being sent to Grant Hospital on June 12 and one for his refusal to work the on-call shifts. *Id.* ¶ 115. Robertson did not say anything to Stromski about his suspension because "there was no need." Pl.'s Dep. at 84-85. When Shepherd returned from vacation, she discussed the situation with Stromski. Def.'s Facts ¶ 118. On July 8, 1998, Stromski and Shepherd decided to fire Robertson for insubordination. *Id.* ¶ 119. They met with Robertson to inform him of his termination. *Id.* ¶ 120.

Robertson denies slamming down the phone after Stromski called him on July 1: he

5

testified at his deposition that he laid the phone on a desk.[2] Pl.'s Dep. at 79-80. Robertson also testified that he only remembered speaking to Stromski once on July 1 and again on July 2, although he did say she may have called him a second time on July 1. *Id.* at 79-81. But he does not deny that he refused to work the on-call shifts.

## Analysis

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court evaluates admissible evidence in the record in the light most favorable to the nonmoving party. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). The Court's "function is not to weigh the evidence but merely to determine if 'there is a genuine issue for trial.'" *Id.* at 694 (citation omitted). "In the employment discrimination context, summary judgment is warranted where 'the evidence, interpreted favorably to the plaintiff, could [not] persuade a reasonable jury that the employer had discriminated against the plaintiff.'" *Markel v. Bd. of Regents of the Univ. of Wisconsin System*, 276 F.3d 906, 910 (7th Cir. 2002) (quoting *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir. 1989)).

Robertson does not claim to have direct evidence of discrimination. Therefore, he must prove gender discrimination using the *McDonnell Douglas* burden-shifting approach. Under this

---

[2] In an affidavit signed by Robertson after his deposition, he states that he "never hung up on the phone on Stromski." Pl.'s Aff. ¶ 3. TRC asks the Court to disregard the affidavit, arguing it contradicts his deposition testimony. Def.'s Reply at 4. When asked at his deposition whether he "slam[med] the phone up on the wall" after the July 1 conversation, Robertson responded: "I don't recall that. I laid it on the desk." Pl.'s Dep. at 79-80. The Court finds Robertson's statement in his affidavit is not inconsistent with his deposition testimony. But, ultimately, whether Robertson hung up on Stromski is not dispositive. *See infra* footnote 3.

method of proof,

> to establish a prima facie case for gender discrimination, the plaintiff must demonstrate that: (1) [he] is a member of a protected class; (2) [he] was performing [his] job to [his] employer's legitimate expectations; (3) that in spite of [his] meeting the legitimate expectations of [his] employer, [he] suffered an adverse employment action; and (4) that [he] was treated less favorably than similarly situated [female] employees.

*Id.* at 911 (citations omitted). If Robertson establishes a prima facie case, the burden shifts to TRC to offer a non-discriminatory reason for his termination. *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 704 (7th Cir. 2003). If TRC offers a legitimate reason for firing Robertson, he must show that the proffered reason is pretextual. *Id.* TRC says it fired Robertson for his insubordination in refusing to work the on-call shifts he was assigned. Robertson can prevail on his claim only if he can make out a prima facie case of discrimination and show that TRC's stated reason for his termination is pretextual. The Court concludes Robertson cannot make out a prima facie case of gender discrimination because he has failed to identify similarly situated female nurses who were treated more favorably by TRC than he was. Therefore, the Court need not probe the sincerity of TRC's proffered reason for firing him.

Robertson identifies two female employees of TRC–Carolyn Dade and Ruby Page–who were not disciplined when they requested that their on-call shifts be reassigned. To demonstrate these women were similarly situated to him, Robertson does not have to show "complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). To do this, he must show that he and the female employees "dealt with the same supervisor, were subject to the same standards,

and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617-18 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). There is no dispute that Robertson, Dade and Page were all full-time acute dialysis care nurses based at Olympia Fields Hospital who reported to the same supervisor. But the Court agrees with TRC that the circumstances surrounding their conduct are too dissimilar for them to be considered similarly situated.

Robertson argues that he and Page are similarly situated because after receiving the on-call schedule for June/July 1998, "she called Sandoval and requested a schedule change." Pl.'s Resp. at 6. But Robertson concedes that Page did not refuse to work the on-call shifts she was assigned. Def.'s Facts ¶ 78; Pl.'s Resp. to Def.'s Facts ¶ 78. Furthermore, Page contacted Sandoval immediately to express her concerns with the new schedule, whereas Robertson waited until the day before he was supposed to be on call to tell Stromski that he was not going to work the on-call shifts. Because Page called Sandoval immediately to question the fairness of being placed on call three weeks in a row and did not refuse to work her assigned shifts, Robertson is not similarly situated to Page.

Robertson argues that he and Dade are similarly situated because she refused to work an on-call assignment. However, the facts surrounding Dade's refusal distinguish it significantly from Robertson's conduct. At some point, Dade had received her on-call schedule in the mail and made plans for the weekend she was not on call. Dade Dep. at 51. But when she went to Olympia Fields Hospital, she saw a different on-call schedule posted that had her working the weekend for which she had made plans. *Id.* at 52-53. Dade immediately called Sandoval and explained that she had made plans based on the schedule she had received in the mail and could

8

not work the shift assigned to her on the new schedule she saw posted at Olympia Fields. *Id.* at 53. Dade was not disciplined in any way for refusing to work the shift. *Id.* at 54.

TRC points out two important mitigating factors that distinguish Dade's refusal from Robertson's.[3] First, Dade immediately called Sandoval when she thought she was assigned to an on-call shift that she could not cover. Dade Dep. at 53. Second, Dade did not leave TRC scrambling to cover an on-call shift, because the assignment she saw posted on the hospital wall did not represent the actual schedule she was required to work. Def.'s Reply at 6. In other words, Dade was not actually scheduled to work the weekend that she said she could not work. Stromski Decl. ¶¶ 7-8. Robertson argues that because Dade thought she was scheduled to work the shift when she refused to work it, her insubordination was equivalent to his. Pl.'s Resp. at 6. The Court finds, however, that the different effects of Robertson and Dade's conduct on TRC–leaving the company in the lurch, as opposed to having no effect at all–are the type of "differentiating or mitigating circumstances" contemplated by the Seventh Circuit in *Radue v. Kimberly-Clark Corp.* as precluding two employees from being considered similarly situated.

Because Robertson cannot identify similarly situated female nurses who were not disciplined as he was, he cannot make out a prima facie case of gender discrimination. For this reason, the Court need not consider the arguments Robertson raises in an attempt to show TRC's rationale for his termination is pretextual.

---

[3] TRC raises a third factor that distinguishes Robertson and Dade's conduct. TRC alleges that Robertson hung up on Stromski and that she tried to call him several times on both July 1 and 2 but he abruptly ended the calls. Def.'s Facts ¶¶ 99-100, 103, 106-07. TRC argues that, in contrast, Dade acted professionally when she declined to work the shift she mistakenly thought she was assigned to work. Because there is a factual dispute as to whether Robertson hung up on Stromski and whether she tried to call him more than twice on July 1 and more than once on July 2, the Court will not consider these factors as distinguishing Robertson from Dade.

9

## Conclusion

For the reasons stated above, the Court grants Total Renal Care's motion for summary judgment [docket # 22]. The Clerk is directed to enter judgment in favor of the defendant. The trial date of January 5, 2004 is vacated.

                                                              MATTHEW F. KENNELLY
                                                               United States District Judge

Date: October 10, 2003